# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 1035 | **DATE** | 7/21/2011 |
| **CASE TITLE** | Ryan Companies US, Inc. et al. v. Secura Insurance Company | | |

**DOCKET ENTRY TEXT**

Motion by defendant Secura Insurance Company for judgment on the pleadings as to Ryan Companies, Inc. [41] is denied. Discovery is ordered closed on 9/22/11. Ruling set for 7/22/11 is vacated. Status hearing set for 9/9/11 at 10:00 a.m.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    Plaintiffs Ryan Companies, Inc. ("Ryan"), Oak Brook Mechanical Services, Inc. ("Oak Brook"), and Westfield Insurance Company ("Westfield"), seek defense and indemnity from Secura Insurance Company ("Secura") as additional insureds under a policy issued by Secura to B&N Heating and Air Conditioning, Inc. ("B&N"). The complaint alleges that Ryan, the general contractor of a construction project in Hoffman Estates, hired Oak Brook as a subcontractor; that Oak Brook subsequently hired B&N as its own subcontractor; and that Oak Brook's agreement with B&N required B&N to add Oak Brook and Ryan as additional insureds to B&N's policy. When one of B&N's employees was injured on the job, he sued Ryan and Oak Brook in the Circuit Court of Cook County, Illinois. Ryan and Oak Brook tendered their defense and indemnity in the suit to B&N, citing the additional insured endorsement to the Secura policy, which provides:

> Who is an insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

After Secura rejected both tenders, Ryan and Oak Brook were defended in the underlying suit by Westfield. Plaintiffs filed this suit seeking a declaratory judgment that Secura owes Ryan and Oak Brook a duty to defend and indemnify, and asserting claims for equitable subrogation, equitable allocation of Ryan's defense expenses, and contractual subrogation.

## STATEMENT

In April 2010, Secura moved to dismiss the complaint pursuant to Rule 12(b)(6), arguing that the additional insured endorsement required a written contract or agreement between B&N and the additional insured, and denying that any such written agreement existed between B&N and Oak Brook. I denied the motion, holding that plaintiffs had sufficiently alleged "that there was an agreement, evidenced by several written documents, among other things, showing a mutual understanding between the parties that Ryan and Oak Brook be named additional insureds on the Secura policy." Order at 2.

Advancing a slightly different argument, Secura now moves for a judgment on the pleadings as to Ryan under Rule 12(c). Secura points out that, under the plain language of the provision, there must be a written agreement not only between B&N and Oak Brook, but also between B&N and Ryan. According to Secura, the complaint's allegations show that a written contract existed only between B&N and Oak Brook.

In support of its position, Secura cites the Illinois Court of Appeals's recent decision in *Westfield Ins. Co. v. FCL Builders, Inc.*, 948 N.E.2d 115 (Ill. App. Ct. 2011). The facts and questions presented in the case are virtually identical to those here. The relationship between the parties in *Westfield* – FCL, Suburban, and JAK – directly parallels the relationship between Ryan, Oak Brook, and B&N in this case. In addition, JAK's insurance policy with Westfield contained an "additional ensured" endorsement identical for all practical purposes to the one included in B&N's policy with Secura. Specifically, the endorsement provided that "Who Is an Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such a person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." *Id.* at 117. The court held that FCL was not covered as an additional insured under the policy because the endorsement's language unambiguously required a written contract between JAK and each person to be added as an additional insured. Since no written contract existed between FCL and JAK, FCL was not covered.

In reaching its holding, the court rejected all of the counter-arguments that Ryan makes here in opposition to Secura's motion. For example, FCL argued that it was an additional insured because the terms of the contract between JAK and Suburban obligated JAK to include FCL as an additional insured on the Westfield policy. The court held that a contractual obligation between Suburban and JAK was not sufficient, since the additional insured provision specifically required a written contract between JAK and FCL. The court also refused to consider the deposition testimony of Suburban's owner and JAK's superintendent stating their intention that FCL be an additional insured under the Westfield policy. The court held that this was extrinsic evidence and could be considered only where the contractual language was ambiguous. Additionally, the court was unpersuaded by FCL's appeal to the certificate of insurance it had received which listed FCL as an additional insured. The court pointed to a disclaimer on the certificate (identical to the one here) stating: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR

ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." Since there was no written contract between FCL and B&N, FCL was not an additional insured under the policy; and since the policy's terms were controlling, the certificate of insurance was of no moment.

Ryan advances a host of reasons why Secura's Rule 12(c) motion is procedurally improper. For example, Ryan argues that the motion should be denied because it effectively amounts to a motion to reconsider the denial of Secura's earlier 12(b)(6) motion. Along similar lines, Ryan contends that the denial of the 12(b)(6) motion constitutes the law of the case and must not be disturbed. These arguments fail because Secura does not seek to challenge the earlier question of whether a written contract exists between Oak Brook and B&N. Rather, Secura raises a distinct argument that there must be a written contract not only between B&N and Oak Brook, but also between B&N and Ryan. Nor has Secura waived the argument by virtue of the fact that it failed to present it in the Rule 12(b)(6) motion. *See, e.g.*, *U.S. ex rel. Washington v. Gramley*, No. 97 C 3270, 1999 WL 446848, at *1 (N.D. Ill. June 21, 1999) ("Though Rule 12 generally requires a defendant to raise all available defenses in one motion to dismiss, there are exceptions. One such exception permits a defendant to raise a failure to state a claim defense in a pleading, by a motion for judgment on the pleadings, or at trial even if he failed to raise it in a prior motion to dismiss.") (citations omitted).

Ryan also maintains that Secura's motion violates the mend-the-hold doctrine, which provides "that a contract party is not permitted to change its position on the meaning of a contract in the middle of litigation over it." *First Bank and Trust Co. of Illinois v. Cimerring*, 365 Fed. App'x. 5, 8 (7th Cir. 2010). In response, Secura correctly points out that the doctrine applies only where a one party suffers some detriment due to the other's change of position. *Id.* (observing that "Illinois courts have held that the mend the hold doctrine cannot be applied absent a showing of detriment or unfair surprise"). But, despite Secura's insistence to the contrary, it is not clear that Ryan has not been disadvantaged by the shift in Secura's interpretation of the policy. For example, Ryan claims that, because the parties were close to reaching a settlement prior to the *Westfield* decision, it "had exercised forbearance in pressing Secura for discovery compliance," Resp. at 12, and that the record in the case consequently has not been developed. Ryan maintains that there is evidence in the record showing that "Oak Brook simply conveyed Ryan's insurance requirements to B&N," which, acording to Ryan, "is no different then [sic] if Ryan had sent insurance requirements to B&N via messenger." *Id*. It further asserts that the certificate issued by Secura's agent "evidenc[es] B&N's acceptance of Ryan's requirements," and suggests that this could constitute a written contract since "[a] written contract or agreement does not have to be signed in order to be accepted; it can be accepted by performance." Resp. at 12-13 (citation omitted).

Without expressing a position on the merits of the latter arguments, Ryan's request for additional discovery is reasonable. Indeed, Ryan claims that Secura has yet to produce a copy of the underlying policy in question. Secura argues that Ryan has never before argued that there "might be other

bases for coverage elsewhere in the Secura policy," and that "[i]f anything, it would appear that Ryan is the one who is contravening the "mend the hold" doctrine, not Secura." Def.'s Reply at 5. But endorsements to an insurance policy should interpreted based on the policy as a whole. *See, e.g.*, *Proin S.A. v. LaSalle Bank, N.A.*, 223 F. Supp. 2d 960, 966-67 (N.D. Ill. 2002) ("In determining whether the endorsement sentence raises an ambiguity, this court examines the contract as a whole, and attempts to give meaning and effect to each provision in the contract."); *Paris-Custardo v. Great American Ins. Co. of New York*, 844 N.E.2d 1011, 1015 (Ill. App. Ct. 2006) ("Since we must construe the policy as a whole, the endorsement must be read in conjunction with the specific language of the [policy's] exclusions section."). This conclusion is bolstered by the fact that certain of the documents in question in the suit specifically refer back to the Secura policy. For example, as noted above, the certificate of insurance that lists Ryan as an additional insured provides: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." *Cf. Westfield*, 948 N.E. 2d at 120 (noting that under Illinois law, if a certificate of insurance "refers to the policy and expressly disclaims any coverage other than that contained in the policy itself, the policy [as opposed to the certificate] controls")(quotation marks omitted). The certificate of insurance presupposes familiarity with the policy.

As for the *Westfield* decision, while the case is clearly suggestive, it is equally clear that the decision is not binding here. *See, e.g.*, *Alvizo v. Metro Ford Sales & Service, Inc.*, 2002 WL 10470, at *2 (N.D. Ill. 2002) ("A federal court applying state law must attempt to resolve the issues as if it were the highest court of the state that provides the state law. Moreover, decisions by intermediate state appellate courts are not necessarily binding or authoritative in federal court.") (citations omitted). Furthermore, although the facts in *Westfield* nearly mirror the facts present here, there is no indication that, as here, the policy at issue in the case itself had never been produced.

In short, while I conclude that the mend-the-hold doctrine does not foreclose the argument that Secura advances in this motion, I conclude by the same token that Ryan is entitled to discovery before being required to respond to the argument. Accordingly, I deny Secura's motion for judgment on the pleadings.